IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

JEHU HAND and JIRAWAN CHANRIT,

Plaintiffs,

v.

INTERNAL REVENUE SERVICE,

Defendant.

Case: 1:25-cv-03678
Assigned To : Sooknanan, Sparkle L.
Assign. Date : 10/17/2025
Description: FOIA/Privacy Act (I-DECK)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Jehu Hand and Jirawan Chanrit bring this complaint for declaratory and injunctive relief, and state as follows in support thereof:

**RECEIVED**
OCT 17 2025
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### PRELIMINARY STATEMENT

1. The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, "was enacted to promote transparency and accountability in how the federal government discharges its numerous and far-ranging responsibilities." *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 256 (D.D.C. 2016). FOIA provides a means for the public to access government documents and "mandates that an agency disclose records upon request, unless they fall within one of nine exemptions." *Id.* at 257. The statute requires that documents be "furnished without any charge or at a [reduced] charge" if disclosure of the information will "contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the

1

requester." 5 U.S.C. § 552(a)(4)(A)(iii). The statute further limits the fees that may be charged to non-commercial entities and members of the news media. *Id.* § 552(a)(4)(A)(ii)(I)-(III).

2. Plaintiffs are husband and wife, who filed joint tax returns for 2017, 2018 and 2019. They were notified in October 2019 that their 2017 return had been selected for audit on suspicion of having undisclosed foreign financial accounts. After Plaintiffs provided thousands of pages of financial records back to and including 2010, the revenue agent failed to find any errors in their 2017 tax return or evidence of undisclosed accounts. A second revenue agent was assigned the audit in June 2022, and expanded the audit to include 2018 and 2019 as well, but he was likewise unable to identify any audit issues. By this time, the statute of limitations for assessments under IRC § 6501 had expired for 2017 and 2018.

3. In November 2022, a third revenue agent, Eric Mingott ("Mingott") took over the audit, sending additional and duplicative document requests to those already made. Mingott also expanded the audit to include suspicion of FBAR non-compliance for 2016. In March 2023, Mingott and three other IRS staff deposed Plaintiffs at the Defendant's El Monte, California office. In connection with the audit, and as elaborated upon below, in June 2023 Plaintiffs filed FOIA request 2023-16312. Plaintiffs requested a fee waiver with respect to their request based on public interest. Defendant has failed to respond to FOIA request 2023-16312.

4. Without any remedy at the agency, Plaintiffs reluctantly bring this suit to vindicate their right under FOIA to the documents which have wrongfully been denied to

2

them. This case seeks (a) declaratory relief that the Defendant is in violation of FOIA and its own regulations for failing to fulfill Plaintiff's requests for records; (b) injunctive relief requiring the Defendant to immediately and fully comply with Plaintiffs' request under FOIA without assessing improper costs; and (c) attorneys fees in the event Plaintiffs retain an attorney in this proceeding, and reasonable costs.

## PARTIES AND JURISDICTION

5. Plaintiffs are individuals, both citizens of the United States of America, who filed tax returns for 2017, 2018 and 2019. These returns became the subject of an audit.

6. Defendant Internal Revenue Service is a component of the Department of the Treasury and an agency of the United States Government within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 552a(a)(1). Defendant is headquartered at 1111 Constitution Avenue, NW, Washington, DC 20224.

7. Defendant has possession, custody, and control of the records to which Plaintiffs seek access, but has illegally denied Plaintiffs access to the same.

8. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

9. This Court has personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B), as it is an agency of the United States government.

10. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## STATUTORY FRAMEWORK

11. FOIA "requires the government to disclose, upon request, broad classes of documents identified in 5 U.S.C. § 552(a)," unless the documents are exempted under 5 U.S.C. § 552(b). *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015). An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination whether or not to fulfil the request, and of the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i). "The statute requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013). Then the requester may appeal and the agency must make a determination on that appeal within 20 business days. 5 U.S.C. § 552(a)(6)(A)(ii).

12. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

## STATEMENT OF FACTS

13. Plaintiffs' FOIA request 2023-16312 stated the following:

This request relates to an examination of the Taxpayers' tax returns for 2017 through 2019 as well as alleged foreign accounts/FBAR for 2016.
1. Examination administrative file for tax years 2016 to 2019, inclusive.
2. To the extent not included in the above, all suspicious activity reports received from FinCEN with respect to the Taxpayers since 2008.
3. Any information in your files with respect to foreign financial accounts owned by either Taxpayer, or on which either Taxpayer had signature authority, from 2000 to the present.

4

4. Any communication, whether by mail, email, or verbally to the extent memorialized in writing, between the Internal Revenue Service or its personnel, on the one hand, and Mark Viau or his representative(s) on the other hand, mentioning Taxpayers.

5. Any communication from any person who referred the Taxpayers for examination of their tax returns.

These items can be provided on a USB, if possible.

We request a waiver of duplication, search and/or review fees on the basis that the disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Defendant and is not primarily in the commercial interest of the Taxpayers. We will review the information requested and report to the public on a YouTube channel and on Rumble on any abuses by the examining team revealed by the documents received. If our exemption request is denied, we undertake to cover the cost of any duplication, search and/or review fees up to $500. If you estimate that you will exceed this amount, please inform us.

14. One specific item in Plaintiffs' request were prompted by a letter Plaintiff Hand received in 2013, which is attached as Exhibit 1 to this Complaint, and the remainder by the conduct and statements of Mingott during the audit. In the letter, a former FBI agent named Mark Viau, who alleged to be owed money by a third party, threatened to use his contacts in the Federal government to bring down the "full weight" of said government against Plaintiff Hand. Interestingly, Plaintiff Hand had filed a *Bivens* lawsuit against Viau in early October 2019, mere weeks before the Defendant commenced its audit. Plaintiff Hand wanted to know whether Viau was making good on his threats. He believed and continues to believe that if former Federal law enforcement officers are using the Defendant to assist in collecting debts, that is a matter of great public interest.

15. Mingott made several representations to Plaintiffs in the course of his audit activities: (a) that the audit was prompted by numerous SARs filed with respect to Plaintiff Hand's alleged frequent cash purchases of expensive jewelry; (b) that Mingott

5

knew that Plaintiff Hand had specific undisclosed foreign financial accounts, but Mingott would not inform his supervisors about such accounts if Plaintiffs agreed to the proposed adjustments to their tax returns resulting in an aggregate assessment of $1,348,727.81 in taxes, penalties and interest; (c) that Plaintiff Hand had undisclosed bank accounts at Sunwest Bank numbers xx5131, xx 1241, and xx7157 showing deposits of undeclared income; (d) that Plaintiff Hand had undisclosed financial accounts with Legacy Global Markets, a Belizean financial institution; (e) that Plaintiff Hand had an Antiguan bank account with $5.973,806.69 in cash; and (f) that because Plaintiffs had filed an amended return for 2017, Defendant had the unilateral right to indefinitely extend the statute of limitations on tax assessments.

16. Plaintiff Hand could not recall any cash jewelry purchase, so he wanted to see the alleged SARs. His spouse, Plaintiff Chanrit, was also curious because she had not received any expensive jewelry. If Mingott were lying about the SARS, Plaintiffs wanted to know. Plaintiffs wanted to have a copy of the administrative record so they could prepare to contest the notice of deficiency that Mingott was sure to process, and so that they could see the procedures Mingott had undertaken to evade the statute of limitations issue[1] Plaintiffs also wanted copies of some bank records for 2016 and 2017 that they had lost, but that Mingott had obtained via subpoena.[2] Plaintiffs wanted a copy of their deposition transcript as evidence of Mingott's lies and the acquiescence of Supervisor Ofori and Defendant's counsel's acquiescence in those lies. Plaintiffs also wanted to

---

[1] Plaintiff Hand had no experience in tax audits, but most of his legal practice had involved aggregative or divisive corporate reorganizations under IRC §368. He knew that Mingott was lying about the statute of limitations issue.
[2] IRC 7602(c)(2) and 26 CFR 301.7602-2 require Defendant, on taxpayer request, to provide information regarding all records it has received on the taxpayer from third parties. Plaintiffs timely made that request in writing, but were ignored. If the Defendant is violating Federal law, this is something of great public interest. Even though Plaintiffs had lost the bank records, they had contemporaneous ledgers showing all activity in the account.

know specifics about the cash they allegedly had in the Sunwest and Antiguan bank accounts and in Belize. Plaintiffs had no knowledge of those accounts, but if some distant relative or philanthropist had deposited millions of dollars in Plaintiff Hand's name, Plaintiffs would like to get that money. They requested information on these bank accounts from Mingott, but Mingott refused to provide that information.

17.   Plaintiffs continue to want to know where these millions of dollars Mingott claimed were in bank accounts, because in these inflationary times, they could use the money. If a revenue agent lies to taxpayers he is examining, or the Defendant has a policy approving that procedure, that is a matter of great public interest. Or, if the accounts really do exist, and Mingott hid that fact from his supervisor, a criminal referral would be appropriate.

18.   Mingott's proposed assessments of $1,348,727.81 for 2017 through 2019, while Plaintiffs had average annual gross income of $72,757, appeared to be based on far-fetched and incomprehensible theories. Plaintiffs did not believe that Mingott's proposed assessments were valid. They also believed that if they indeed had money in offshore accounts, the Defendant should follow its procedures and penalize them for it, hopefully leaving some cash for them to retain. Eventually, Mingott proceeded with the assessment and a notice of deficiency was issued. No evidence or allegation of undisclosed foreign accounts or FBAR violations was made in the notice of deficiency. Plaintiffs contested the notice of deficiency in Tax Court case 1360-24, and the Tax Court referred the matter to the Independent Office of Appeals.

19.   IRC §7803(e)(7)(A) provides that in the Appeal process the Defendant is

7

required to provide taxpayers with a copy of the non-privileged portion of the audit administrative file.[3] Plaintiffs hoped that they would finally receive the administrative record from Appeals and obtain some of the information requested under FOIA. However, Appeals notified Plaintiffs that the administrative record for their audit had disappeared from Defendant's electronic records. Of course, this leads to the inference that Defendant and Mingott are hiding malfeasance. Unavailability of the administrative record delayed completion of the appeal. Eventually, Appeals rejected the $1,348,727.81 in assessments and concluded that Plaintiffs should receive a refund for 2017. This was stipulated by the Defendant in the Tax Court proceeding and the Tax Court entered the stipulation as a decision on March 27, 2025. Plaintiffs await payment of the refund.

20.     As of the date of this Complaint, more than 27 months after their request, Defendant has failed to gather and review all records requested by Plaintiffs. Defendant has sent a series of letters to Plaintiffs informing them of delays in responding to their FOIA request, and stating that Plaintiffs are free to sue under the statute for the records. Because the agency has failed to respond substantively to Plaintiffs' request, Plaintiffs have exhausted administrative remedies with respect to the FOIA request. *Id.* § 552(a)(6)(C); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990).

## CLAIMS FOR RELIEF

### CLAIM 1
### (Failure to Produce Records)

---

[3] "(A) In general. In any case in which a conference with the Internal Revenue Service Independent Office of Appeals has been scheduled upon request of a specified taxpayer, the Chief of Appeals shall ensure that such taxpayer is provided access to the nonprivileged portions of the case file on record regarding the disputed issues (other than documents provided by the taxpayer to the Internal Revenue Service) not later than 10 days before the date of such conference."

21. Plaintiffs reassert and incorporate by reference allegations 1-20.

22. FOIA requires agencies to search for and produce all records responsive to a request unless they are lawfully exempt from production.

23. Plaintiffs submitted a lawful request for all records described in paragraph 13 above. To date, Plaintiffs has not received a substantive response to this request from the Defendant.

24. Therefore, the Defendant has violated FOIA's mandate to respond and produce the records or explain which exemptions apply to them.

25. Plaintiffs are being harmed by reason of the Defendant's violation of FOIA and unlawful withholding of records to which Plaintiffs is entitled. Plaintiffs will continue to be harmed unless the Defendant is compelled to comply with the statute and produce the requested records.

### CLAIM 2
(Costs and Fees)

26. Plaintiffs reassert and incorporate by reference allegations 1-25.

27. Pursuant to 5 U.S.C. § 552(a)(4)(E), "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." Plaintiffs are statutorily entitled to recover fees and costs incurred as a result of the Defendant's improper withholding of agency records, and refusal to fulfill the FOIA request at issue in this case.

28. Plaintiffs ask the court to order the Defendant to pay reasonable attorney

9

fees and other litigation costs reasonably incurred in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and pray for the following relief:

(1) A declaration pursuant to 28 U.S.C. § 2201 that the Defendant has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiffs' FOIA request 2023-16312 dated June 21, 2023.

(2) An order directing the Defendant to:

(a) Respond to Plaintiffs' FOIA request 2023-16312 dated June 21, 2023.

(b) Release immediately all responsive records to Plaintiffs' FOIA request 2023-16312 dated June 21, 2023.

(c) Grant Plaintiffs a fee waiver.

(3) An order awarding Plaintiffs their costs and, if any, attorney fees.

(4) Such other and further relief as the court deems just and proper.

Respectfully submitted on October 13, 2025

_____
Jehu Hand
PO Box 2439
Lake Arrowhead CA 92352
jehuhand@gmail.com
(949) 422-4263

_____
Jirawan Chanrit
P.O. Box 2439
Lake Arrowhead CA 92352
j_chanrit@hotmail.com
(949) 422-4263